**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

CARL ERIC PETERSON,

      Plaintiff,

      v.

W. CHRISTIAN MEYER,

      Defendant.

Case No.: 4:15-CV-38-JVB-PRC

**OPINION AND ORDER**

Carl Peterson sued W. Christian Meyer for violations of the Fair Debt Collection

Practices Act. Both parties moved for summary judgment.


**A.      Facts**

Carl and Penny Peterson were married at all relevant times. In early September 2014, a

medical provider treated Penny. She signed agreements to pay the medical provider for these

services. But, for a period of time, she did not pay the balance due after insurance payments. The

medical provider eventually referred the unpaid amount to attorney Meyer for collection. Carl

asserts he is not liable for the debt. (Pl.'s Reply, DE 23 at 1.)

On March 3, 2015, Meyer sent a dunning letter to Penny attempting to collect the alleged

debt in the amount of $2,136.08, plus $52.37 in interest, plus $875.78 in attorney's fees. Meyer

addressed this letter to Penny only. The letter does not mention Carl.

Penny showed the letter to Carl, who called Meyer's office on March 9, 2015, and spoke

with Meyer's assistant. According to the assistant, Carl mentioned that he and his wife hoped to

refinance their home. (Def.'s Br., DE 18 at 4.) Carl and the assistant discussed a payment plan.

Carl's understanding was that the payment plan was exclusively for his wife, and did not obligate him. Regarding the first phone call, Carl testified "I understood that I had helped my wife set up a payment agreement . . . ." (Dep. Carl Peterson, DE 17-1 at 26:6–7.)

Carl then spoke with Meyer or his assistant on March 11, 2015. They discussed payment arrangements. Counsel for Meyer asked Carl at his deposition about this phone call:

> Q:  As you sit here eight months later,
>      what do you remember about that first phone call
>      where you talked with Attorney Meyer?
>
> A:  I just remember talking about possible payment
>      arrangements.
>
> Q:  Do you remember the parameters of those
>      discussions?
>
> A:  I think we were just talking about what we could
>      possibly handle or what my wife could handle,
>      because there have been quite a few other medical
>      bills the last year or so and I was trying to help
>      her get it as low as possible just so she could
>      continue to pay hers and I could continue to pay
>      mine, because this was not the only one we had.
>
> Q:  Do you recall any discussion in either of those
>      first two phone calls where there was any
>      discussion about who was going to be responsible
>      for making the payments?
>
> A:  I guess my thought was that it was my wife.
>
> Q:  And I appreciate that. What I'm asking is, was
>      there ever a statement made that this will only be
>      your wife or was it something that was left
>      unstated?
>
> A:  I think it was unstated. If there was something
>      specific, I don't remember.

(*Id.* at 27:9–28:2.)

Carl acknowledges that the result of these telephonic communications was an agreement to a payment arrangement (Pl.'s Br., DE 13 at 1) but the parties disagree about whether the arrangement would bind Carl. Carl claims he never agreed to be legally obligated for the debt. (*Id.* at 2.)

The same day, on March 11, 2015,[1] Meyer's assistant sent the Petersons a proposed Payment Agreement. This document identifies Carl and Penny collectively as "Obligor," and sets out a payment plan by which Carl and Penny would agree to pay various sums per month, with the final payment due in March 2016. This proposed agreement contains separate signature blocks for Carl and Penny. But the Petersons did not sign this proposed agreement.

Carl claims the proposed Payment Agreement was an attempt to collect the medical debt from him. Indeed, the document identifies itself as an attempt to collect a debt: "THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (Payment Agreement, DE 13-1 at 5.)[2]

Meyer filed a lawsuit regarding the debt against only Penny in Tippecanoe Superior Court on March 23, 2015: Cause Number 79D04-1503-SC-01137.

On March 30, 2015, Carl called Meyer's office and said he did not agree with the proposed Payment Agreement because it called for his signature and he didn't think he had an obligation to sign for his wife's debt. Carl claims the office told him he was responsible for the

---

[1] The proposed Payment Agreement identifies its effective date as March 3, 2015. (Payment Agreement, DE 1-2.)

[2] The copies of the Payment Agreement filed with the Court (DE 1-2; DE 13-1 at 5; and DE 17-1 at 24) include copies of a note that obscures a portion of the quoted text. But based on the unobscured portion, there is no reason to think the text is not the same boilerplate language contained at the bottom of some other documents in the record, such as the March 3, 2015, letter (DE 17-1 at 21). Carl does not claim that the obscuring of the text is itself a violation of the FDCPA.

debt because it was medical debt incurred by his wife. (Aff. Carl Peterson, DE 13-1, ¶ 11.) Carl argues that the office's claim notes tend to confirm that the office made this statement. (Pl.'s Br., DE 13 at 2, citing Exhibit C, DE 13-3.) But Meyer and his staff deny ever telling Carl he was legally obligated to pay his wife's debt. (Def.'s Br., DE 18 at 2.) During this call, Meyer's assistant told Carl about the lawsuit. This was his first notice of the lawsuit because Penny had not yet been served.

Meyer personally called Carl back the same day. The parties also dispute the contents of this conversation. Carl claims Meyer told him that he was responsible for his wife's medical debt because of the doctrine of necessities, and that Meyer asked Carl to sign an Agreed Judgment in exchange for the medical provider's agreement to accept payments on the debt. (Aff. Carl Peterson, DE 13-1, ¶ 13.) Carl testified that Meyer said Indiana law holds the husband responsible for all his wife's bills, and that Carl concluded based on this conversation that Meyer would file a lawsuit against Carl based on the debt. (Dep. Carl Peterson, DE 17-1 at 33:22–35:1.)

But Meyer says he merely explained the doctrine of necessities and explained that he lacked sufficient information to determine whether or not Carl was liable for the debt. (Aff. Meyer, DE 17-3, ¶ 14.) Meyer says he explained that he was asking Carl to sign the Payment Agreement in exchange for the ability to make payments and avoid further legal action against Penny. (Def.'s Br., DE 18 at 6, quoting Aff. Meyer, DE 17-3, ¶ 14.) Meyer claims Carl agreed that he and his wife would sign Agreed Judgments. *Id.* Meyer and his assistant claim they never told Carl he was legally obligated for his wife's debt. (Aff. Meyer, DE 17-3, ¶ 15; Aff. DeLion, DE, 17-4, ¶ 9.)

On April 1, 2015, Meyer sent a letter and two proposed Agreed Judgments to Carl and Penny. This letter purports to concern the then-pending small-claims lawsuit and lists Carl's name in the reference to that lawsuit: "**Re: <u>GLHS Unity Surgical Center v. Carl E. & Penny S. Peterson</u> Cause No. 79D04-1503-SC-01137**." (Letter, April 1, 2015, DE 1-3 at 1.) But Carl was not a party to that lawsuit. And Carl claims he was not liable for the debt.

In the letter, Meyer references his telephone conversation with Carl on March 30, 2015, and says the enclosed Agreed Judgment "outlines the terms of your agreement for payment of the medical account . . . ." (*Id.*) Meyer says in the letter that once the Petersons sign and return the Agreed Judgments, he will file Penny's with the Tippecanoe Superior Court, and he will hold Carl's pending receipt of timely payments. (*Id.*)

One enclosed proposed Agreed Judgment bears a caption listing Penny S. Peterson as the Defendant in the case filed in Tippecanoe Superior Court, and calls for her signature. The other enclosed proposed Agreed Judgment bears a caption listing Carl E. Peterson as the Defendant in the same case, and calls for his signature. Again, Carl was not actually a party to that lawsuit. The Petersons did not sign the proposed Agreed Judgments.

Carl called Meyer's office again on April 3, 2015, and indicated he still did not think he should have to sign for Penny's debt.

Penny was served with the small-claims lawsuit on April 7, 2015. Carl understood at all times that he was not a party to that lawsuit.

Carl appeared with Penny at a hearing in the small-claims lawsuit on May 20, 2015, and discussed the debt with Meyer in person, on the record. They discussed a payment plan. Carl

mentioned efforts to refinance their home, and their desire to avoid a judgment. Meyer and

Penny executed a Withheld Judgment the same day. Carl did not sign this document.

**B.      Claims and procedural posture**

Carl claimed Meyer violated the Fair Debt Collection Practices Act by, among other

things:

> a.   falsely representing the character, amount, or legal status of a debt in attempting to collect a debt that Plaintiff does not owe, in violation of 15 U.S.C. § 1692e(2)(A);
>
> b.   using a false representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10);
>
> c.   attempting to collect an amount that is not expressly authorized by an agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1); and
>
> d.   failing to send written notice to Plaintiff of the information required by 15 U.S.C. § 1692g(a) within five days of Defendant's initial communication with Plaintiff, in violation of 15 U.S.C. § 1692g(a).

The parties exchanged motions for summary judgment. Carl concedes the dismissal of his

section 1692f claim. Accordingly, the Court DISMISSES this claim, with prejudice.

**C.      Summary judgment standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking

summary judgment bears the initial responsibility of informing a court of the basis for its motion

and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**D.     Discussion**

**(1)     *15 U.S.C. § 1692e(2)(A)***

Carl claims Meyer violated section 1692e(2)(A) of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and in particular prohibits a debt collector from making a false representation of "the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A). Carl claims Meyer violated this statutory provision by stating and implying Carl was liable for the medical debt, although he was not.

Carl claims Meyer and his assistant expressly stated during both telephone conversations on March 30, 2015, that Carl was liable for the debt because it was his wife's medical debt.

Carl claims Meyer implied Carl was liable for the debt by identifying him on the Payment Agreement as an "Obligor" responsible for the debt, and by asking Carl to sign the Payment Agreement as "Obligor." Carl further claims Meyer implied Carl was liable for the debt by identifying him on correspondence and an Agreed Judgment as a party to the small-claims lawsuit, and by drafting the Agreed Judgment to make Carl liable for the entire debt if signed.

But genuine issues of material fact preclude summary judgment for Carl on this claim. First, regarding the alleged explicit statements, Meyer and his assistant both submitted affidavits affirming that they never stated to Carl that he was legally responsible for the debt. (Aff. Meyer, DE 17-3, ¶ 22; Aff. DeLion, DE 17-4, ¶ 9.) The Court at this stage must not attempt to weigh the credibility of these competing claims. In the light most favorable to Meyer, the Court cannot conclude that he or his assistant expressly told Carl he was liable for his wife's debt.

Second, regarding the alleged implications, the Court at this stage cannot conclude as a matter of law that the documents sent by Meyer to the Petersons, when viewed in context and in the light most favorable to Meyer, implied Carl was liable for his wife's debt. The applicable test is objective. *Turner v. J.V.B.D. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The test turns on "whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Id.* In other words, a communication violates section 1692e if "a person of modest education and limited commercial savvy would be likely to be deceived." *Evory v. RJM Acquisitions Funding*, 505 F.3d 769, 774 (7th Cir. 2007). The relevant perspective is not that of the least intelligent person in the country. *Id.* The unsophisticated consumer "may

be uninformed, naive, and trusting," but still has "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (internal citations and quotations omitted). Reasonableness prevails. Courts "disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations . . . ." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005).

Moreover, context matters. Meyer did not send the challenged documents to Carl in a vacuum. Interpretation of the documents depends on determining the contents of the surrounding oral communications. But genuine issues of material fact exist regarding the contents of these oral communications.

Regarding the proposed Payment Agreement that identified Carl as an "Obligor" and called for him to sign to undertake liability, the key is that in the light most favorable to Meyer, he merely *proposed* the Payment Agreement. The document did not make Carl liable for the debt unless and until he signed it. Moreover, in the light most favorable to Meyer, he proposed this document because Carl seemed to have agreed to its substance on the phone. And Carl offers no evidence, sufficient to compel summary judgment, that the Payment Agreement in context is objectively deceptive or misleading. Indeed, the evidence (in the light most favorable to Meyer) indicates this document did not in fact deceive or mislead Carl. He objected to the document and refused to sign it. Carl is arguably more sophisticated than the prototypical unsophisticated, but reasonable, person. But he has not demonstrated as a matter of law that the document would deceive or mislead someone with less acumen.

Regarding the letter of April 1, 2015, and the Agreed Judgment enclosed for Carl's signature, these documents present a closer issue. The inclusion of Carl's name in the case

caption splashed across the top of the documents could be false, deceptive, and misleading to an unsophisticated, but reasonable, person. But in the context of the discussions, and in the light most favorable to Meyer, the Court cannot conclude this as a matter of law. A reasonable jury could conclude that Carl and Meyer contemplated the possibility of Carl joining in his wife's debt in exchange for a payment plan and litigation outcome favorable to the Petersons. A reasonable jury could conclude that Carl and Meyer understood that the small-claims lawsuit would not actually include Carl as a named party unless and until he signed the Agreed Judgment and then defaulted on the payments. Moreover, as with the Payment Agreement, Carl offers no evidence, sufficient to compel summary judgment, that the letter and Agreed Judgment in context are objectively deceptive or misleading. He says he "believes" that an unsophisticated consumer who received these documents would wonder whether he had been added to the lawsuit or would be added in the near future. But Carl does not offer sufficient evidence in support of this belief to compel summary judgment, and in the light most favorable to Meyer the Court cannot find a violation here as a matter of law. And again, though not dispositive by itself, the letter and Agreed Judgment did not actually deceive or mislead Carl.

In the light most favorable to Meyer, making reasonable inferences and resolving ambiguities in his favor, the Court cannot conclude as a matter of law that he violated section 1692e(2)(A) of the FDCPA.

Turning to Meyer's motion for summary judgment on the same claim, the Court cannot conclude as a matter of law that Meyer did *not* use any false, deceptive, or misleading representation in connection with the collection of this debt. A reasonable jury, for example, could conclude that listing Carl's name in the caption of a lawsuit to which he was not a party,

even given the context and Carl's subjective understanding that he was not a party to that lawsuit, was false, deceptive, or misleading based on the objective standard.

Accordingly, the Court denies summary judgment to both parties regarding this claim.

**(2)    *15 U.S.C. § 1692e(5)***

Section 1692e(5) prohibits a debt collector, in connection with the collection of any debt, from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Carl claims the Payment Agreement constituted a threat to take legal action against him for the debt even though he was not liable for the debt and therefore Meyer could not legally take legal action against him.

Again, the test is objective, invoking the unsophisticated, but reasonable, consumer. *St. John v. Cach, LLC*, 822 F.3d 388, 389–90 (7th Cir. 2016).

For reasons parallel to those identified above, the Court cannot conclude as a matter of law, when viewing the facts in the light most favorable to Meyer, that he violated section 1692e(5).

Turning to Meyer's motion for summary judgment on the same claim, Meyers argues "Carl conceded away this claim in his deposition [by] making clear he never actually perceived the document as a threat." (Def.'s Br., DE 18 at 14.) But Carl's deposition testimony quoted by Meyer merely demonstrates that Carl knew the lawsuit was filed solely against Penny. Meyer makes an unfounded logical leap when he argues that this shows Carl did not perceive Meyer's representations to constitute threats to add Carl to the lawsuit. Carl could coherently conclude

upon receiving certain documents from Meyer that he threatened to add Carl to a lawsuit he was not already in. And, more to the point, a jury could reasonably find that an unsophisticated, but reasonable, person would perceive the documents as such a threat.

Accordingly, the Court denies summary judgment to both parties regarding this claim.

**(3)**   *15 U.S.C. § 1692e(10)*

Section 1692e(10) of the FDCPA prohibits a debt collector, in connection with the collection of any debt, from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Defendant claims that many of Meyer's actions which allegedly violated other subsections of the FDCPA also violated this subsection. For the reasons discussed above, the Court denies summary judgment to both parties on this claim.

**(4)**   *Additional violation of 15 U.S.C. § 1692e*

Carl claims Meyer admitted to violating section 1692e when, in Meyer's initial summary judgment brief, he said he told Carl during the March 30, 2015, telephone call that he, Meyer, lacked sufficient information to determine whether or not Carl had any liability for the debt. Carl argues that if Meyer said that, then he violated section 1692e because that is a false statement. Relying on *Hickory Creek at Connersville v. Estate of Combs*, an Indiana appellate decision, Carl argues Meyer's statement was false because the only way Carl could have been liable for the debt under Indiana law was if Meyer had sued Penny, obtained a judgment, and failed to

collect on that judgment. But, the argument goes, Meyer knew he had not obtained a judgment against Penny because the small-claims lawsuit he filed remained pending. So, Carl concludes, Meyer had enough information to determine Carl did not at that time have any liability for the debt.

The record contains several pieces of evidence regarding what Meyer said to Carl during the March 30, 2015, telephone call.

First, Meyer's contemporaneous notes regarding the call say: "I explained Rule of Necessities and trade-off for creditor taking payments for a year—he decided to sign separate AJ [Agreed Judgment] that we will hold pending timely receipt of payments." (Claim Notes, DE 17-3 at 11.)[3]

Second, Meyer's affidavit states:

> I returned Carl's call later that day [March 30, 2015]. I explained to him during that telephone call the implications of the Rule of Necessities in Indiana. I further explained that I didn't have enough information to determine whether or not he had any liability for the debt in question, but that he was being asked to sign the payment agreement in exchange for the ability to make payments and avoid further legal action against Penny. Carl agreed to sign an Agreed Judgment that would be held in my file and not filed with the Court unless payments defaulted on the payment plan. Carl agreed on behalf of Penny that she would also sign and [sic] Agreed Judgment that would be filed with the Court.

(Aff. Meyer, DE 17-3, ¶ 14.)

Carl makes a good argument in support of his additional claim. But this argument cannot prevail at this procedural stage for several reasons.

_____

[3] This hand-written statement is not a calligraphy paragon, but the transcription here provided surely captures most of the original, and any possible deviations would not alter the Court's holding.

First, in the light most favorable to Meyer, and resolving ambiguities in his favor, Meyer's statement might have been objectively true, and not deceiving or misleading.

Second, even if the statement were false, that does not necessarily make it actionable. Statements that are false in a hyper-technical sense do not as a matter of law violate the FDCPA if they are not materially misleading, deceptive, or confusing to a reasonable, unsophisticated person. "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Wahl*, 556 F.3d at 645–46.

Here, in the light most favorable to Meyer, the context of the statement and the evidence before the Court do not compel the conclusion that the statement violated the FDCPA as a matter of law. After the challenged statement, Meyer immediately explained to Carl that Meyer was asking Carl to sign the Payment Agreement in exchange for the ability to have a payment plan, and to avoid further legal action against Penny. Meyer did not say he was asking Carl to sign the Payment Agreement because Carl was already liable for the debt, or to avoid legal action against Carl.

Moreover, to the extent Carl typifies such a reasonable, unsophisticated person, the record viewed in the light most favorable to Meyer shows the statement did not in fact materially mislead, deceive, or confuse Carl. He refused to sign the proposed Agreed Judgment. And Carl has presented no evidence sufficient to force the conclusion as a matter of law that the statement would materially mislead, deceive, or confuse the reasonable, unsophisticated person.

The parties debate whether *Hickory Creek* requires a debt collector to obtain a judgment against the original debtor and fail to collect on it as pre-requisites to the limited, secondary liability of the non-contracting spouse under Indiana's doctrine of necessities. *Hickory Creek* did

not need to reach that particular issue because the debt collector in that case failed even to sue the original debtor (or her estate) in the first place. *Hickory Creek at Connersville v. Estate of Combs*, 992 N.E.2d 209, 214 (Ind. Ct. App. 2013). But that issue is ultimately a red herring here, at this procedural stage, because even if Meyer's statement were technically false, that does not necessarily make it materially misleading, deceptive, or confusing from an objective standpoint as a matter of law, given the context, and the evidence before the Court.

The Court therefore denies summary judgment to Carl regarding this claim. To the extent Meyer's briefing could be construed as asking for summary judgment on this claim, the Court also denies summary judgment to Meyer.

**(5)** *15 U.S.C. § 1692g(a)*

Carl claims Meyer violated section 1692g(a) of the FDCPA by failing to send Carl a written notice containing the required information following the initial communication. Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is

> disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Carl argues that once Meyer began attempting to collect the debt from Carl—by sending the Payment Agreement with a signature block for Carl; or by talking with Carl about his liability for the debt on March 30, 2015, or April 1, 2015; or by sending the letter and proposed Agreed Judgment listing Carl in the lawsuit's caption—Carl became a consumer for purposes of section 1692g(a). Meyer does not dispute that he did not send Carl a section 1692g(a) notice following his communications with Carl.

But Carl encounters the same obstacle to summary judgment as before. There are genuine issues of material fact regarding these communications, their context, and what they mean under an objective standard. When viewing the facts in the light most favorable to Meyer, and resolving ambiguities in his favor, the Court cannot conclude as a matter of law that Meyer had a duty to provide section 1692g(a) notice to Carl, much less that Meyer breached that duty.

Turning to Meyer's motion for summary judgment on this issue, Meyer cites an unreported case from the Southern District of Ohio (*Newton v. Portfolio Recovery Assocs.*, No. 2:12-CV-698, 2014 WL 340414, at *10–11 (S.D. Ohio January 30, 2014)) for the "implicit" (Meyer's word) assumption that notice directed to the wife is sufficient as to the husband. Although there is arguably a certain logic to this proposition, the plain language of the statute compels the opposite conclusion, and Meyer cites no binding case supporting his position.

When triggered, the statute directs a debt collector to send a section 1692g(a) notice to a "consumer." The statute defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). This definition does not include a consumer's spouse, unless that spouse is himself a "consumer." The fact that section 1692c of the statute explicitly includes the consumer's spouse in the definition of "consumer" for purposes of that section, coupled with the fact that section 1692g contains no such deviation from the subchapter's general definition of "consumer," demonstrates that a "consumer" for purposes of section 1692g does not include the consumer's spouse. As another district court recognized: "Both provisions—Sections 1692g(b) and 1692c(d)—plainly call the principle embodied in the familiar maxim 'expressio unius est exclusio alterius' into play." *Zaborac v. Phillips & Cohen Assocs., Ltd.*, 330 F. Supp. 2d 962, 967 (N.D. Ill. 2004).

Meyer does not cite any binding case compelling the conclusion that section 1692g(a) notice sent only to Penny satisfied any obligation Meyer might have had to send such notice to Carl because they are married.

Meyer also argues that even if Carl were a "consumer" for section 1692g purposes, he was not in default at the time of the communications with Meyer, so the statute did not apply to this obligation because section 1692a(6)(F)(iii) exempts from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Meyer acknowledges that the account with respect to Penny was in default, but argues that no demand had ever been made of

Carl, and he was not in default on the obligation, so Meyer could not have been a debt collector regarding Carl.

Meyer cites no binding case in support of this argument. Carl responds that Meyer waived this argument by not supporting it with authority. Carl further argues that Meyer's interpretation of the statute is unsupportable, and that if it were correct, the statute would never apply where the debt collector dunned the wrong person. Although the argument is tantalizing, Meyer has not developed it sufficiently to serve as a basis for summary judgment.[4]

At this stage, given the various genuine issues of material fact, and viewing the facts in the light most favorable to Carl and resolving ambiguities in his favor, the Court cannot conclude as a matter of law that Meyer did not violate section 1692g(a).

Accordingly, the Court denies summary judgment to both parties on this claim.

E.      Conclusion

The Court GRANTS Meyer's motion for summary judgment (DE 17) only regarding Carl's section 1692f claim, and dismisses this claim with prejudice. The Court DENIES Meyer's motion for summary judgment in all other respects. The Court DENIES Peterson's motion for summary judgment (DE 12).[5]

**SO ORDERED** on September 22, 2016.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE

[4] Indeed, depending on how it might have proceeded, the argument that Carl, even if a "consumer," was not in default might not jibe with, for example, the characterization of Peterson as an "Obligor" subject to the admissions and duties contained in the Payment Agreement, had he signed it.
[5] The Court commends both parties on their generally thoughtful and thorough briefing.